#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAY WHORISKEY <br> 325 South Madison Avenue <br> Upper Darby, PA 19082 <br><br> Plaintiff, <br><br> v. <br><br> LOWE'S COMPANIES, INC. d/b/a <br> LOWE'S HOME IMPROVEMENT <br> 116 West Township Line Road <br> Havertown, PA 19083 <br><br> Defendant. | Civil Action No.: _____ <br><br> **JURY TRIAL DEMANDED** |

## **COMPLAINT – CIVIL ACTION**

Plaintiff, Ray Whoriskey ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Lowe's Companies, Inc. d/b/a Lowe's Home Improvement ("Defendant"), alleges as follows:

1. Plaintiff brings this action to redress violations by the Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* for discharging Plaintiff on account of his disability and/or because Defendant regarded him as being disabled within the meaning of the ADA, and in retaliation for requesting a reasonable accommodation in connection thereto. Plaintiff further brings this action to redress violations by the Defendant of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and Pennsylvania Common Law. As a result, Plaintiff has suffered damages set forth herein.

## PARTIES

2. Plaintiff Ray Whoriskey is a citizen of the United States and the Commonwealth of Pennsylvania, and currently maintains a residence at 325 South Madison Avenue, Upper Darby, PA 19082.

3. Upon information and belief, Defendant Lowe's Companies, Inc. d/b/a Lowe's Home Improvement is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business located at 116 West Township Line Road, Havertown, PA 19083.

## JURISDICTION AND VENUE

4. On or about June 15, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2020-04181. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated September 22, 2020, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising Plaintiff had ninety (90) days to file suit against Defendant.

6. Plaintiff filed the instant action within the statutory time frame applicable to his claims.

7. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

8. This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as his federal claims.

## FACTUAL BACKGROUND

11. Paragraphs 1 through 10 are hereby incorporated by reference as though the same were fully set forth at length herein.

12. On or about September 28, 2018, Defendant hired Plaintiff in the position of Sales Specialist.

13. At all times material hereto, Plaintiff received positive performance reviews, occasional praise, and no significant discipline.

14. By way of example, in or around June 2019, Plaintiff was informed by Defendant that he was ranked first in sales leading all other employees at Defendant's location.

15. On or about July 31, 2019, Plaintiff suffered a work place injury while pulling product down from Defendant's shelving.

16. Specifically, while pulling the product, Plaintiff felt a "pop" in his knee and severe pain in his lower back.

17. Immediately afterward, Plaintiff notified Defendant's Assistant Store Manager, Chris LNU (Last Name Unknown), that he sustained a workplace injury.

18. Despite Plaintiff's severe pain and discomfort, Plaintiff informed Chris LNU that he would like to continue working for the remainder of the day before seeking medical attention.

19. Shortly thereafter, on or about August 2, 2019, Plaintiff sought medical attention to treat and diagnose his workplace injuries with Defendant's workers' compensation doctor.

20. Subsequently, Plaintiff was diagnosed with a tear in his meniscus and knee as well as a strain in his lower back.

21. Plaintiff's torn meniscus and knee plus strained lower back all constitute injuries within the meaning of the ADA in that they limit major life activities, such as working, standing, bending, and general movement.

22. Plaintiff's workers' compensation doctor then directed Plaintiff to engage in physical therapy and take a medical leave of absence to care for and treat his disabilities.

23. Plaintiff immediately advised Defendant of his doctor's recommendations and requested a medical leave of absence in connection thereto.

24. At no time did Defendant inform Plaintiff of his rights under the FMLA.

25. Plaintiff's request for leave in connection with his disabilities constitutes a request for a reasonable accommodation under the ADA.

26. More specifically, Plaintiff required leave from in or around August 2019 until December 28, 2019.

27. On or about December 28, 2019, Plaintiff's doctor cleared him to return to work with restrictions.

28. Plaintiff's work restrictions were input into Defendant's third-party claims administrative service provider, Sedgwick.

29. Upon information and belief, Plaintiff's restrictions were then transmitted and provided to Defendant by the Sedgwick system.

30. Specifically, according to Plaintiff's doctor's recommendations, Plaintiff required a light duty accommodation consisting of a lifting restriction of no more than fifteen (15) pounds and sedentary work for less than twenty percent (20%) of his scheduled shift.

31. Additionally, Sedgwick informed Defendant that Plaintiff was to return to work on cash register duties due to my restrictions.

32. The aforementioned light duty requests constitute requests for accommodations under the ADA.

33. Upon Plaintiff's return to work, Defendant placed him on cash register duty.

34. On or about January 3, 2020, approximately one (1) week after Plaintiff's return to work with restrictions, Defendant abruptly terminated Plaintiff's employment allegedly due to missing too many days of work.

35. Specifically, Defendant's Assistant General Manager, Chris Ferrel ("Mr. Ferrel"), stated, "we have a problem, you missed too many days since 2018 and have to let you go."

36. Notably, excluding the time out from work in connection to Plaintiff's disabilities, Plaintiff only missed seven (7) days of work since the beginning of his employment with Defendant on or about September 28, 2018.

37. It is believed and therefore averred that Defendant terminated Plaintiff because of his actual/perceived disability, because Defendant regarded Plaintiff as disabled, and in retaliation for Plaintiff's request for a reasonable accommodation in connection thereto, in violation of the ADA.

38.     It is further believed and therefore averred that Defendant willfully violated the provisions of the FMLA by interfering with Plaintiff's right to protected medical leave in violation of the FMLA by not advising Plaintiff of his rights.

39.     It is finally believed and therefore averred that Defendant terminated Plaintiff in retaliation for filing a claim for worker's compensation in connection to his work-related injuries.

40.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, and humiliation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION AND RETALIATION

41.     Paragraphs 1 through 40 are hereby incorporated by reference as though the same were fully set forth at length herein.

42.     At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

43.     Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.44. Plaintiff's torn meniscus and knee plus strained lower back all constitute injuries within the meaning of the ADA/PHRA in that they limit major life activities, such as working, standing, bending, and general movement.45. Despite his disability, Plaintiff would have been able to perform the essential functions of his job with or without a reasonable accommodation, including, but not limited to, a medical leave of absence and light duty.

46. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by terminating Plaintiff's employment on the basis of his actual/perceived disability and in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto.

47. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive and/or compensatory damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## THE FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 2601, *et seq.*
## <u>INTERFERENCE</u>

48. Paragraphs 1 through 47 are hereby incorporated by reference as though the same were fully set forth at length herein.

49. Defendant employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

50. Plaintiff was an eligible employee under the FMLA and entitled up to twelve (12) weeks of unpaid leave for her serious health condition.

51. Defendant interfered with Plaintiff's rights under the FMLA by failing to notify him of these rights and provide him with the requisite FMLA paperwork.

52. The aforementioned actions of Defendant constitute interference under the FMLA.

53. As a result of Defendant's actions, Plaintiff has suffered significant damages.

54. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully request that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Liquidated damages;

C. Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT III
## PENNSYLVANIA WORKER'S COMPENSATION ACT/
## WRONGFUL DISCHARGE UNDER PENNSYLVANIA COMMON LAW
## 77 P.S. § 1-1031 *et seq.*
## RETALIATION

55. Paragraphs 1 through 54 are hereby incorporated by reference as though the same were fully set forth at length herein.

56. At all times relevant hereto, Defendant was subject to the provisions of the PWCA.

57. Plaintiff suffered a work-related injury and requested workers' compensation benefits connected thereto.

58. As a result of Plaintiff's workplace injuries set forth above, Plaintiff filed a petition for worker's compensation benefits against Defendants.

59. The PWCA, in pertinent part, prohibits an employer from taking any adverse employment action against an employee in retaliation for that employee exercising his right to file a petition for worker's compensation benefits thereunder.

60. It is believed and therefore averred that Defendant unlawfully violated Pennsylvania's Worker's Compensation Law and/or the public policy exception to Pennsylvania's common law tradition of at-will employment by unlawfully and retaliatory terminating Plaintiff's

employment because of Plaintiff's claim for benefits under Pennsylvania's Worker's Compensation Law.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant him the maximum relief allowed by law, including, but not limited to:

A.      Back wages, front pay, loss of fringe benefits, and raises in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.      Compensatory, exemplary, and/or punitive damages;

C.      Pre-judgment interest in an appropriate amount; and

D.      Such other and further relief as is just and equitable under the circumstances;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

> Respectfully submitted,
>
> **MURPHY LAW GROUP, LLC**
>
> By: */s/ Sarah Manning*
> Sarah Manning, Esq.
> Eight Penn Center, Suite 2000
> 1628 John F. Kennedy Blvd.
> Philadelphia, PA 19103
> TEL: 267-273-1054
> FAX: 215-525-0210
> smanning@phillyemploymentlawyer.com
> *Attorney for Plaintiff*

Dated: December 17, 2020

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.